LOUIS MARSH ET AL., PARTNERS, &c., PLAINTIFFS IN ERROR, v. THE NEWARK HEATING AND VENTILATING MACHINE COMPANY, DEFENDANT IN ERROR.

1. On error it will be presumed, in the absence of instructions to the contrary, that the trial court submitted all disputed questions of fact to the jury for its determination.

2. The joint owners of a patent-right, in the absence of special agreement creating that relation, are not partners. They are owners in common, and are not liable to each other for an individual use of the patented invention, and they are competent to contract with each other for the manufacture and use of it, which contracts are enforceable according to due course of procedure in courts of law as well as in equity.

3. In order to be relevant, evidence in a cause must be such as directly touches upon the issue which the parties have made by the pleadings. Such evidence as does not assist in the determination of the issue made between the parties is irrelevant.

On error to the Essex Common Pleas.

Argued at February Term, 1894, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the plaintiffs in error, *Philip W. Cross.*

For the defendant in error, *Michael T. Barrett.*

The opinion of the court was delivered by

LIPPINCOTT, J. This cause, under the statute entitled "An act to authorize the transfers of suits from the several

county circuit courts to the several inferior courts of common pleas," approved March 23d, 1892 (*Pamph. L., p.* 224), was transferred from the Essex Circuit Court to the Essex Common Pleas for trial. The trial was had, and a verdict was found by the jury in favor of the plaintiff, and against the defendants, for the sum of $525.54, upon which judgment was entered, which judgment was removed into this court, by writ of error, for review.

This action is founded upon an alleged verbal contract by which the defendants engaged or employed the Newark Heating Machine Company to build six machines, known as "Murray's Improved Lightening Bottling and Corking Machine." The evidence, on the part of the plaintiff, shows that both defendants came to the office of the company and ordered the machines. It appears that one Peter Murray was at the time, on or about March 10th, 1891, the owner of the patent for these machines, and the evidence of the defendants is that they never employed either the Newark Heating Machine Company or the plaintiff company to build these or any other machines for them, but that there was an arrangement or agreement between the defendants and Murray, by which they, upon an assignment to them by Murray of the one-half interest in the patent, agreed to advance money to assist him in building the machines, Murray to repay them by the sale of the machines; that they then furnished some money and received two machines, and paid the sum of $150 to the plaintiff. The plaintiff corporation was, soon after the alleged order was given, organized, and the Newark Heating Machine Company merged into the plaintiff corporation, to which Murray, in May, 1891, assigned his other half interest in the patent, so that when this suit was commenced it was owned by the plaintiff corporation and the defendant, each owning a half interest. The plaintiff corporation alleges that it manufactured these six machines, informed the defendants that they were ready for delivery, and that two of them were taken by the defendants, who paid to the plaintiff the sum of $150. Murray swears that the machines were manufactured

for the defendants upon their order by the plaintiff, and that they were so constructed under the supervision of the defendants. One of the witnesses, Ruhle, testifies that he was employed by the plaintiff, in August, 1892, to sell these machines, and that the plaintiffs represented to him that they were the owners and manufacturers of these machines. The defendants claim that they paid the $150 to the plaintiff upon its representation that Murray owed them the money, and not because they engaged the plaintiff to manufacture the machines. This is the only excuse given by the defendants for this payment to the plaintiff.

There is no dispute as to the correctness of the account of labor and materials furnished in the construction of these machines. The plaintiff recovered a verdict of $525.54. The defendant challenges the correctness of some of the rulings of the learned trial judge rejecting evidence and some of the instructions to the jury.

This is a writ of error, and it is only error in law in the conduct of the cause by the trial judge to which the attention of this court can be directed. It is observable that all of the evidence offered at the trial is not included in the case as it appears before us, and the court has only adverted to what is before us sufficiently to show that disputed facts exist.

The defendants requested the trial court to charge the jury "that the testimony on the part of the plaintiffs was that the order for the machines was given to the Newark Heating Machine Company, and not to the Newark Heating, Ventilating and Machine Company, the plaintiff, and that therefore the plaintiffs were not the proper parties to the suit and could not recover." The trial court refused to charge this request as stated, and the exception allowed upon such refusal furnished one of the grounds of alleged error.

It is obvious that this request presents questions of fact for the jury alone to determine.

The evidence involves a consideration of the question what the terms of the contract were and with whom the agreement for the manufacturing of these machines was made. It will

be seen that these were questions sharply disputed in the evidence, and they are questions entirely within the province of the jury to determine, and it was not for the judge to weigh the evidence and conclude these questions. The request to charge the jury that the plaintiff was not the party with whom the contract was made was properly rejected. The question of whether there existed an express contract between the plaintiff and the defendants was one of fact, and it may also be very well contended that an implied contract was created between the parties, determinable under all the evidence and proved circumstances by the jury. If the materials were furnished and the work done for the construction of these machines by the plaintiff, to the knowledge of the defendants, with their acceptance of the two machines and the payment as made by the defendants to the plaintiff, then the action may have been properly brought, although the order may have been given to another party, and the question arises upon the evidence whether the agreement for the manufacture of these machines was made with the plaintiff or not, and that question should have been, and it is here to be presumed, in the absence of contrary instructions, that the trial judge submitted it to the jury for their finding. From the record it would be impossible to say what the evidence on that part of the case was, as the evidence, in its entirety, does not appear.

I do not think that the refusal of the trial judge to charge the request " that each owner of an interest of the patent had a right to manufacture and sell under that patent regardless of the other co-owners " can be considered as error.

This request was entirely too inclusive in its significance to be charged as an independent proposition applicable to the case. The instruction, in this connection, had already been given that the plaintiff and defendants, each being the owner of the one-half of this patent-right, had the right to manufacture and sell these machines, and it is not denied at all by the defendants that the plaintiff had the right to construct machines for anyone who ordered them, nor can it be denied that the defendants could expressly or impliedly bind them-

selves- to the plaintiff for the construction of these machines, notwithstanding they were the owners of the one-half interest in the patent-right. The joint owners of a patent-right are owners in common thereof. *Dunham* v. *Indianapolis, &c.,* 7 *Biss.* 223; *Vose* v. *Singer,* 4 *Allen* 226; *Duke* v. *Graham,* 19 *Fed. Rep.* 647; *Whitney* v. *Graves,* 13 *Pat. Off. Cas.* 455. In the absence of special agreement they are not partners. *Pitts* v. *Hall,* 3 *Blatchf.* 201. They are not liable to each other for an individual use of the patented invention. *De Witt* v. *Elmira, &c., Manuf. Co.,* 66 *N. Y.* 459; *Parkhurst* v. *Kinsman,* 2 *Halst. Ch.* 600. Each owner may convey his interest to another. *May* v. *Chaffee,* 2 *Dill.* 385; *S. C.,* 5 *Fish. Pat. Cas.* 160. The exact mutual rights of part owners of a patent have never yet, perhaps, been authoritatively settled. If one part owner derives a profit from a patent, either by getting the royalties from its use or purchase-money for the sale of rights, it would seem as if he should be accountable to the other part owner for his portion of the profit, and probably a bill for an account would be sustained therefor. *Aspinwall Manuf. Co.* v. *Gill,* 32 *Fed. Rep.* 697; *Gates* v. *Fraser,* 9 *Ill. App.* 624. In Parkhurst *v.* Kinsman, above cited, there is an expression of the court in favor of this view. Their agreements with each other will be enforced the same as contracts between other individuals. *Hubenthal* v. *Kennedy,* 76 *Iowa* 707. It is well established that joint owners of a patent-right, in the absence of express agreement or covenants relating thereto between them, have interests which are distinct and separate in their nature, and each party has the right to use his moiety as he may think fit. Neither has any superiority of right over the other, and one of them can manufacture and use the articles patented without the consent of the other, and they are at entire liberty to contract with each other as to the manufacture and use thereof, which contracts are the subject of enforcement according to the due course of procedure in courts of law as well as in courts of equity.

The only other exceptions allowed upon which error has been assigned are those in which the trial court overruled evidence offered to prove that after the defendants learned that Murray had assigned the other half interest to the plaintiff, the defendants informed Murray that they would furnish no more money to assist him in the manufacture of the machines, and also to show the nature of the agreement between the defendants and Murray in regard to the repayment of money already advanced to him for the manufacture of machines under their alleged agreements with him.

It is obvious that this evidence was irrelevant to the issue. The action was between the plaintiff and the defendants. Whilst Murray was a stockholder in the plaintiff corporation, he was not a party to this action, and in no sense the agent of the plaintiff nor authorized in any manner to represent it. It is to be observed that this alleged agreement between the defendants and Murray does appear in the evidence, yet it was entirely irrelevant to the issue between the plaintiff and the defendants, and the trial court was right in excluding so much of it as was rejected. It would have been justified in excluding all that passed between the defendants and Murray as irrelevant to the question directly in issue—that is, whether the defendants had entered into an engagement of contract with the plaintiff for the machines in question. The action was based upon the existence of this contract, and what Murray may have stated to the defendants, or what his agreement may have been with them, were matters entirely foreign to the issue, and especially so when it was not within the power or offer of the defendants to connect such evidence with the plaintiff.

Besides, it will be noticed that these alleged declarations of Murray to the defendants and his alleged agreement with them was later in event than the contract which is the subject of this action. They were in no wise connected with the contract. They were not the subject of inquiry as a part of the transaction sued on, and were not of a group of facts

and circumstances, in whole or in part, constituting or nega-
tiving the fact of the existence of the contract.

In order to be relevant, the evidence must be such that it
directly touches upon the issue which the parties have made
by the pleadings. Such evidence as does not assist in the
determination of that issue is irrelevant. *Platner* v. *Platner*,
78 *N. Y.* 95; *Best Prin. Ev.* (*Cham.*) 257; *Greenl. Evid.*
(*14th ed.*), § 51. This evidence was properly overruled.

The conclusion is, that no error appears in the case, and
the judgment must be affirmed.